FILED

2013 Jul-25  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CAROLYN ELAINE GARDNER,          )
                                 )
          Plaintiff;             )
                                 )
     vs.                         )          2:12-cv-02078-LSC
                                 )
CAROLYN COLVIN,                  )
Commissioner of Social Security, )
                                 )
          Defendant.             )

**MEMORANDUM OF OPINION**

## I.     Introduction

The plaintiff, Carolyn E. Gardner, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, Social Security Income ("SSI"), and Disability Insurance Benefits ("DIB"). Ms. Gardner timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Gardner was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision (Tr. at 108.) She has a high-school education, and she has

completed one year of college. (Tr. at 32.) Her past work experiences include employment as polysomnographic technologist and as a surgical technician. (Tr. at 34.) Ms. Gardner claims that she became disabled on September 3, 2008, due to post-surgical lumbar spondylosis and radiculopathy at L5-S1; thrombocytopenic purpura (TTP); obesity; and chronic and severe pain. (Doc. 8 at 4.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or he is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether

the claimant's impairments meet or equal the severity of an impairment listed in 20

C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she

will be found disabled without further consideration. *Id.* If they do not, a

determination of the claimant's residual functional capacity ("RFC") will be made

and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's

impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§

404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past

relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant

cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five

requires the court to consider the claimant's RFC, as well as the claimant's age,

education, and past work experience in order to determine if he or she can do other

work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other

work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Gardner

meets the insured status requirements of the Social Security Act and was insured

through the date of his decision. (Tr. at 18.) He further determined that Ms. Gardner

has not engaged in substantial gainful activity since the alleged onset of her disability.

(*Id.*) According to the ALJ, Plaintiff's post-surgical lumbar spondylosis, radiculopathy

at L5-S1, and obesity are considered "severe" based on the requirements set forth in

the regulations. (*Id.*) However, he found that these impairments neither meet nor

medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. (Tr. at 19.) The ALJ determined that Ms. Gardner has the following

residual functional capacity:

> Light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),
> except that she can only occasionally bend, kneel, squat, or climb stairs
> and ramps can never crawl or climb ropes, ladders, or scaffolding; must
> avoid frequent exposure to hazards such as dangerous machinery,
> unprotected heights, extreme hot or cold temperatures, humidity,
> wetness, and vibration.

(Tr. at 19.)

According to the ALJ, Ms. Gardner is unable to perform any of her past

relevant work. (Tr. at 21.) She is a "younger individual" as the term is defined by the

regulations. (Tr. at 22.) She has a high-school education, and she is able to

communicate in English. (*Id.*) The ALJ determined that Plaintiff has "acquired work

skills from past relevant work that are transferable to other occupations with jobs

existing in significant numbers in the national economy." (*Id.*) The ALJ found that

Ms. Gardner has the residual functional capacity to perform a significant range of light work. (*Id.*) The ALJ used Medical-Vocation Rule 204 as a guideline for finding that there are a significant number of jobs in the national economy that Plaintiff is capable of performing, such as general clerical helper, cashier, receptionist, order clerk, and typist. (Tr. at 22-23.) The ALJ concluded his findings by stating that Plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of his decision. (Tr. at 23.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but it applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act

with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Ms. Gardner contends that the ALJ's decision should be reversed and remanded because the ALJ failed to properly consider various opinions of record when he found that Plaintiff was capable of performing a significant range of light work. (Doc. 8 at 7.) Specifically, Plaintiff argues that the ALJ did not afford proper consideration to the opinions of Dr. Poczarek, a treating source, and that the ALJ

erred by failing to recontact Dr. Poczarek for clarification about his opinion. (*Id.*) She

also contends that the ALJ erred in assigning substantial weight to the opinions of Dr.

Heilpern, a non-examining state physician. (Doc. 8 at 10.) Further, Plaintiff asserts

that the ALJ should have given more weight to the opinions of Dr. Crunk, a non-

medical vocational expert in her worker's compensation case. (Doc. 8 at 9.) The court

will address these arguments in turn.

### A.    Dr. Poczarek's Opinion

Plaintiff contends that the ALJ improperly evaluated the opinion of Dr.

Poczarek, her treating physician. (Doc. 9 at 3.) A treating physician's testimony is

entitled to "substantial or considerable weight unless 'good cause' is shown to the

contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir.

2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal

quotations omitted). The weight to be afforded a medical opinion regarding the nature

and severity of a claimant's impairments depends, among other things, upon the

examining and treating relationship the medical source had with the claimant, the

evidence the medical source presents to support the opinion, how consistent the

opinion is with the record as a whole, and the specialty of the medical source. *See* 20

C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to

not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

On November 20, 2009, Dr. Poczarek saw Plaintiff for a check-up on her lower back pain. (Tr. at 567.) He elected to send Plaintiff for an additional MRI to determine whether there was any pathological cause of her symptoms. (*Id.*) He indicated that Plaintiff should be released from medical care if the MRI results were normal. (*Id.*) Plaintiff underwent her MRI on December 3, 2009. (Tr. at 569.) Other than straightening of normal lumbar lardosis, the MRI physician indicated that Plaintiff's lumbar spine was normal. (Tr. at 570.)

The ALJ declined to give any weight to Dr. Poczarek's opinion from a Workman's Compensation Status Form dated December 17, 2009, two weeks after the MRI. (Tr. at 21.) On the form, Dr. Poczarek checked a pre-printed option indicating that the Plaintiff was "not able to work," without providing further

explanation. (Tr. at 571.) As the *Phillips* case indicates, "good cause" for disregarding a treating physician's opinion exists where the opinion is conclusory or unaccompanied by objective medical evidence. *Phillips*, 357 F.3d at 1241. The ALJ accurately noted that this particular opinion was not well explained; it simply indicated that Plaintiff was unable to work. (Tr. at 21.) Dr. Poczarek authorized Plaintiff's release from medical care pending a normal MRI, and then changed his opinion and declared that the plaintiff was unable to work, despite the MRI's normal results. (Tr. at 567, 569-71.) The only basis for Dr. Poczarek's finding was lumbar radiculopathy, which was not found during the MRI exam. (Tr. at 569-71.) He provided no other justification for his opinion that Plaintiff could not work. (*See* Tr. at 571.) It was merely a conclusive statement.

Dr. Poczarek's opinion that Plaintiff could not work was also inconsistent with the evidence of record and one of his own notations, which provides "good cause" for an ALJ to refuse to assign an opinion substantial weight. *See Phillips*, 357 F.3d at 1241. In disregarding Dr. Poczarek's opinion, the ALJ noted that it was inconsistent with both the medical evidence of record and the findings of Dr. Heilpern, a state medical examiner whose opinions are discussed below. (Tr. at 21.) Further, the opinion Plaintiff relies upon is contradicted by Dr. Poczarek's recent opinion dated January

25, 2010, wherein he concludes that Plaintiff could return to work as long as she did not exceed her Functional Capacity Evaluation restrictions. (Tr. at 603.) *See Edwards*, 937 F.2d at 583-84 (finding "good cause" for disregarding a treating physician's opinion where it was contradicted by other notations in the physician's own record). Therefore, the ALJ had "good cause" to disregard Dr. Poczarek's opinion.

Further, Dr. Poczarek's indication that Plaintiff is unable to work is not the sort of "medical opinion" entitled to deference under the regulations. *See* 20 C.F.R. §§ 404.1527(e), 416.927(d). Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c). The questions of Ms.

Gardner's RFC and whether she is able to work are ultimately questions for the ALJ. The ALJ has no obligation to give special weight to Dr. Poczarek's opinion that Plaintiff is not able to work. This sort of opinion concerns Plaintiff's disability status, the type of decision that is ultimately reserved for the ALJ. Therefore, the ALJ did not err in determining that Plaintiff was not disabled, despite the contrary indication from Dr. Poczatek's December 2009 form.

Plaintiff further argues that the ALJ should have recontacted Dr. Poczatek in order to clarify his opinions. (Doc. 8 at 10.) An ALJ is only required to recontact a physician when there is not enough evidence in the record to make a decision. 20 C.F.R. § 404.1520b(c)(3). If the ALJ finds the evidence insufficient, he may recontact the treating physician or other medical source. *Id.* However, if the ALJ can make a decision based upon the evidence, he is not under an obligation to recontact the treating physician. *Id.* Plaintiff's medical history and the opinion of Dr. Heilpern, discussed below, provided substantial evidence for the ALJ to make a decision; therefore, the ALJ did not err by failing to recontact Dr. Poczarek.

For these reasons, the Court is of the opinion that the ALJ had "good cause" to disregard Dr. Poczarek's December 2009 assessment of Plaintiff's condition. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41. Further, the ALJ did not

err in failing to recontact Dr. Poczarek for clarification of his opinions.

### B.    Dr. Heilpern's Opinion

Plaintiff also contends that the ALJ erroneously assigned substantial weight to

the opinions of Dr. Heilpern, a non-examining state physician. (Doc. 8 at 10.) As

noted previously, an ALJ must consider several factors in determining the appropriate

weight to give a medical opinion, including the consistency of the opinion with other

evidence and the specialty of the medical professional. *See* 20 C.F.R. § 404.1527(c).

In an unpublished opinion, the Eleventh Circuit stated that the ALJ should give more

weight to opinions that, *inter alia,* are supported by medical findings and that are

consistent with the overall record. *Davis v. Comm'r of Soc. Sec.,* 449 F. App'x 828, 832

(11th Cir. 2011). Further, an ALJ must give more weight to treating or examining

physicians than to non-examining physicians, unless "good cause" for disregarding

a treating physician's opinion is present. *D'Andrea v. Comm'r of Soc. Sec. Admin.,* 389

F. App'x 944, 946 (11th Cir. 2010).

Dr. Heilpern evaluated Plaintiff's physical residual functional capacity in a form

dated December 3, 2009. (*See* Tr. at 556-63.) He concluded that Plaintiff could

occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand or walk

for a total of six hours in an eight-hour workday, and sit for a total of six hours in an

eight-hour workday. (Tr. at 557.) He based these findings on specific medical evidence in Plaintiff's record, including electrodiagnostic evidence of irritation in left lumbar nerve roots with no evidence of radiculopathy, neuropathy, or myopathy; moderate tenderness of lumbar paraspinals and moderate decrease in forward flexion; and an MRI from September of 2009 that indicated disc herniation at L5-S1, herniated pucleus pulposus with lumbar spondylosis, and instability. (*Id.*) Based upon the same information, Dr. Heilpern evaluated Plaintiff's postural limitations, concluding that Plaintiff can do frequent balancing, occasional stair climbing, kneeling, stooping, and crouching, and can never do any crawling or ladder climbing. (Tr. at 558.) Further, Dr. Heilpern concluded that Plaintiff had no manipulative, visual, or communicative limitations, and that she had only minor environmental limitations. (Tr at 559-60.)

The ALJ specified that he relied on Dr. Heilpern's opinion because it was well supported by the evidence of record and was based on access to Plaintiff's medical history. (Tr. at 20.) In fact, Dr. Heilpern's opinion is even consistent with Dr. Poczarek's most recent opinion, in which he cleared Plaintiff to return to work. (*See* Tr. at 607.) Further, the ALJ relied on the fact that Dr. Heilpern is an experienced medical reviewer in the context of disability review. (Tr. at 20.) Although an ALJ must generally give more weight to a treating or examining physician, the ALJ had "good

cause" to disregard the treating physician's opinion. (*See* Part A.) Because the ALJ properly refused to assign significant weight to Dr. Poczarek's opinion, he was justified in giving more weight to the opinions of Dr. Heilpern. For these reasons, the ALJ did not commit reversible error in assigning significant weight to Dr. Heilpern's opinions.

### C.    Dr. Crunk's Opinion

Plaintiff also challenges the ALJ's consideration of the opinions of Dr. Crunk, the vocational expert in her worker's compensation case. (Doc. 8 at 9.) Dr. Crunk opined in a February 2010 letter that Plaintiff's conditions, as they stood at the time of his assessment, would cause her to lose 100% of her earning capacity. (Tr. at 667.) The ALJ correctly noted that Dr. Crunk, as a non-medical professional, is not qualified to provide a medical opinion. *See* 20 C.F.R. § 404.1527(a). The ALJ fully discussed the opinion, but he ultimately declined to adopt Dr. Crunk's conclusions. (Tr. at 21.) Whether an individual is able to work is a determination reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ did not find Dr. Crunk's opinions more convincing than the medical opinions and test results of record, and therefore he did not give substantial weight to Dr. Crunk's opinion. (Tr. at 21). Because the ALJ was the proper party to ultimately determine whether Plaintiff

could work, he did not err in disregarding Dr. Crunk's assertions.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Gardner's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 25th day of July 2013.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]